# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Kenny Christopher, as Trustee of Embroidery Library Inc. Employee Stock Ownership Plan; and Embroidery Library, Inc.; | Civ. No. 09-3703 (JNE/JJK) |
| Plaintiffs, | |
| v. | |
| Harlan L. Hanson, Marcia K. Hanson, Mark B. Hanson, and Scott E. Hanson, | |
| Defendants and Third-Party Plaintiffs, | **ORDER AND REPORT AND RECOMMENDATION** |
| v. | |
| Kenny Christopher, as Trustee of Embroidery Library Inc. Employee Stock Ownership Plan; James Steffen; and Debra Mundinger; | |
| Third-Party Defendants. | |

Richard T. Ostlund, Esq., Mary L. Knoblauch, Esq., and Shannon M. Awsumb, Esq., Anthony Ostlund Baer & Louwagie P.A., counsel for Plaintiffs and Third-Party Defendants.

S. Jamal Faleel, Esq., Crystal M. Patterson, Esq., and David R. Marshall, Esq., Fredrickson & Byron, PA, counsel for Defendants and Third-Party Plaintiffs.

JEFFREY J. KEYES, United States Magistrate Judge

## INTRODUCTION

This matter is before the Court on the following motions: (1) Defendants and Third-Party Plaintiffs' Motion for Dismissal of Plaintiffs' Punitive Damages Claim (Doc. No. 8); (2) Third-Party Defendants' Motion to Dismiss Defendants' Third-Party Complaint (Doc. No. 12); and (3) Defendants and Third-Party Plaintiffs' Motion for Leave to File Amended Answer, Counterclaims and Third-Party Complaint (Doc. No. 23).[1]  The motions to dismiss have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636 and D. Minn. Loc. R. 72.1.  For the reasons that follow, this Court recommends that both motions to dismiss be granted.  The Court also denies the motion for leave to file an amended answer, counterclaims, and third-party complaint.

## BACKGROUND

### I.     Facts

Plaintiffs Kenny Christopher, as Trustee for the Embroidery Library Inc. Employee Stock Ownership Plan (the "ESOP") and Embroidery Library, Inc. ("ELI"), filed this action seeking damages and equitable relief for Defendants' alleged improper handling of the sale and redemption of ELI stock.  Plaintiffs assert claims against Defendants for violations of the Employee Retirement Income Security Act of 1974 ("ERISA").  Plaintiffs also assert state-law claims

---

[1]     Defendants and Third-Party Plaintiffs also filed an Amended Motion for Leave to File Amended Answer, Counterclaims and Third-Party Complaint (Doc. No. 35), which appears to seek the same relief as their initial motion for leave to amend (Doc. No. 23).

under the Minnesota Business Corporation Act, for breach of fiduciary duty, breach of the duty of loyalty, unjust enrichment, aiding and abetting, and civil conspiracy. Defendants and Third-Party Plaintiffs Harlan Hanson, Marcia K. Hanson, Mark B. Hanson, and Scott E. Hanson (collectively the "Hansons"), deny the allegations of wrongdoing in the Complaint and assert five Counterclaims against Plaintiffs, including claims for declaratory relief, contractual claims, and a claim for statutory indemnification for fees, costs, and expenses in defending their actions. The Hansons also filed a Third-Party Complaint seeking indemnification from Third-Party Defendants Debra Mundinger, Kenny Christopher, and James Steffen in connection with the stock transactions at issue.

ELI is a Minnesota corporation that creates and sells embroidery designs for sale to its customers over the internet. (Doc. No. 1, Compl. ¶ 18.) In 2000, Harlan Hanson, the founder of ELI and its former President, Chief Financial Officer, and Chief Executive Officer,[2] arranged for ELI to establish the ESOP as an employee-stock-ownership plan covered by ERISA, and transferred 37% of ELI stock to the ESOP. (*Id.* ¶ 19.) Then, in January and December 2006, the Hansons disposed of all of their remaining stock in ELI through two separate transactions; one transaction involved a sale of some of the Hansons' shares to

---

[2]     *See* Doc. No. 46, Aff. of Kenny Christopher ("Christopher Aff.") ¶ 7, Ex. B at 2 § 2.03.) Per the terms of a January 2, 2005 Shareholder Control Agreement, ELI's other officers included Defendant Marcia K. Hanson, who was ELI's Secretary, and Debra Mundinger, who was ELI's Vice President.

the ESOP, and the other involved ELI's redemption of the Hansons' remaining shares in exchange for bonds from ELI. The bonds were secured by all of ELI's assets and have a monthly interest rate of 8.25%. (*Id.* ¶¶ 20, 32.) On December 31, 2006, with the conclusion of these transactions, the ESOP's ownership of ELI stock increased to 100%. (*Id.* ¶ 33.) Once the sale and redemption were concluded, Harlan Hanson resigned as trustee of the ESOP, and all the Hansons resigned from ELI's Board of Directors. (Compl. ¶ 34.) The crux of this lawsuit is that the Hansons allegedly cheated the company out of millions of dollars in these buyouts in 2006, and thus saddled ELI with crippling ongoing financial obligations.

Plaintiffs allege that Harlan Hanson arranged for the ELI stock that the Hansons transferred to the ESOP to be overvalued by providing an appraiser with inaccurate and incomplete information about ELI. (*Id.* ¶ 24.) Specifically, they allege that Harlan Hanson did not disclose his prior efforts to sell ELI to a third party in 2004 because no third party was willing to pay the per-share price he wanted to receive for the corporation's stock. (*Id.* ¶¶ 22, 26.) They further allege that as a result of the misinformation he provided, the appraiser opined that ELI had a fair-market value of more than $47 million. (*Id.* ¶ 31.) However, Plaintiffs assert that a later appraisal has revealed the corporation's actual fair-market value at the time of the allegedly manipulated appraisal to be closer to $22 million. (*Id.* ¶ 38.) And Plaintiffs assert that they have since 2006 paid over $16 million to the Hansons on the bonds issued, including over $5 million in

4

interest, and that more than $16 million remains to be paid on the bonds.  (*Id.* ¶ 41.)  According to Plaintiffs, by engaging in this wrongdoing, the Hansons breached their fiduciary duties to the ESOP, engaged in transactions prohibited by ERISA, and violated several state-law principles through their actions in connection with the stock transactions at issue.  (*See id.* ¶¶ 43-44.)

## II.  Relevant Procedural Background

### A.  The Hansons' Motion to Dismiss a Punitive-Damages Claim

Plaintiffs included the following language concerning punitive damages in their Complaint's Prayer for Relief:

> **WHEREFORE,** plaintiffs pray that this Court enter judgment upon their Complaint, jointly and severally, against defendants as follows:
>
> . . . .
>
> 7.   An award of punitive damages, if available under common law[.]

(Compl., Prayer for Relief.)  After being served with the Complaint, the Hansons requested that the reference to punitive damages be removed because punitive damages are not available under ERISA and because parties are not permitted to assert claims for punitive damages in their initial complaint in this District when such claims are premised on Minnesota law.  Plaintiffs would not agree to voluntarily remove the reference to punitive damages, asserting that it was not a claim, but a reservation of the right to seek punitive damages at a later time in this case.  The parties were unable to reach an agreement with respect to the

issue, and the Hansons filed a motion seeking to dismiss any claim for punitive damages from the Complaint.

**B.    Third-Party Defendants' Motion to Dismiss Indemnification Claim and the Hansons' Motion to Amend the Third-Party Complaint**

As mentioned above, the Hansons responded to the Complaint by filing an Answer, Counterclaims, and Third-Party Complaint.  (Doc. No. 7, Defs.' Answer, Countercls. and Third-Party Compl. ("Third-Party Compl.") ¶ 187.)  The Third-Party Complaint is against three individuals who had managerial jobs at ELI in 2006 when the Hanson buyout occurred: Debra Mundinger was President of ELI, Kenny Christopher was its Vice President of Production, and James Steffen was the Controller.  The Hansons' allegations against these Third-Party Defendants arise entirely out of the three individuals' roles as trustees for the ESOP.  (*See id.* ¶¶ 181-87.)  Specifically, the Hansons assert that as trustees of the ESOP, the Third-Party Defendants procured an appraisal of ELI in connection with the December 31, 2006 stock transaction, and this appraisal set the value of ELI's shares at $286.52 per share.  (*Id.* ¶ 181.)  Mundinger, Christopher, and Steffen then allegedly presented the appraisal to the Hansons to satisfy the ESOP's obligations, under a Stock Purchase Agreement, to obtain an independent written evaluation of ELI's fair-market value.  (*Id.*)  The Hansons assert that if the appraisal is found to be false or inaccurate, as alleged in Plaintiffs' Complaint, and the Hansons are found to have entered into any prohibited transactions with the ESOP as a result, the Hansons will be subjected to tax liability and will be

required to disgorge the value they received for their shares in ELI.  (*Id.* ¶¶ 182-83.)  The Hansons say that they relied on Mundinger, Christopher, and Steffen as trustees of the ESOP and that the Hansons relied on the appraisal these three individuals procured under the Stock Purchase Agreement.  (*Id.* ¶ 184.)  Finally, the Hansons included the following paragraph in their Third-Party Complaint:

> 187.   In the event the transactions are deemed prohibited and the Hansons are required to disgorge the proceeds received or required to pay income taxes, excise taxes or penalties, the Hansons are entitled to equitable or common law indemnification from Mundinger, Christopher and Steffen because any such loss should be borne by the individuals who procured the false appraisal – not the Hansons.

(Third-Party Compl. ¶ 187.)

The Third-Party Defendants moved to dismiss the indemnification claim, asserting that such a claim is preempted by ERISA under Eighth Circuit precedent.  (*See* Doc. No. 18, Third-Party Defs.' Mem. in Supp. of Mot. to Dismiss Defs.' Third-Party Compl. ("3rd Party Defs.' Mem.") 8-11.)  In response, the Hansons have moved to amend their initial Third-Party Complaint to clarify that they are only seeking indemnification (and to add a claim for contribution) if the Hansons are found liable on any of Plaintiffs' state-law claims that are not deemed preempted by ERISA.  (Doc. No. 29, Mem. in Supp. of Third-Party Pls.' Mot. for Leave to Am. Answer, Countercls. and Third-Party Compl. and in Opp'n to Third-Party Defs.' Mot. to Dismiss ("Hansons' Amendment Mem.") 7-9.)

In the Hansons' proposed Amended Answer, Counterclaims, and Third-Party Complaint, the nature of the Hansons' allegations have substantially

changed. The allegations no longer concern any actions Mundinger, Christopher, and Steffen's took as trustees of the ESOP. The Hansons now want to pin the potential liability of the three individuals on their conduct in their capacity as officers of ELI. (Doc. No. 35, Am. Motion for Leave to Am. Answer, Countercls. and Third-Party Compl., Attach. 1 ("Am. Third-Party Compl.") ¶¶ 179-81.) As officers, these Third-Party Defendants allegedly exercised effective control over ELI in 2005 and 2006, each stood to individually benefit from the elimination of the Hansons' ownership interest in the corporation, and the Hansons allegedly relied upon the appraisal they received. (*Id.* ¶¶ 182-84.) The Hansons also seek leave to assert the following:

> 187. If the Court determines that Plaintiffs' state-law claims for equitable relief under the Minnesota Business Corporations Act and common law (Count 5), breach of fiduciary duty under common law (Count 6), breach of duty of loyalty (Count 7), unjust enrichment (Count 8), aiding and abetting (Count 9), and conspiracy (Count 10) are not pre-empted by ERISA, and if the Court determines that the Hansons are liable under any of these claims, then the Hansons are entitlted to contribution and/or indemnity from Mundinger, Christopher and Steffen for those state-law claims.

(*Id.* ¶ 187.) According to the proposed amended pleading, Mundinger, Christopher, and Steffen allegedly knew or should have known that the appraisal they procured did not represent ELI's fair-market value, and yet they presented it to the Hansons in connection with the December 31, 2006 stock transaction. (*See id.* ¶¶ 189-93.)

In response to the Hansons' motion to amend, the Third-Party Defendants now assert: (1) that the motion to dismiss the initial Third-Party Complaint should

be granted because the indemnification claim as asserted therein is preempted; and (2) that the Hansons' proposed amendment should be denied for futility because the Hansons have failed to plead sufficient facts to state a claim for indemnification or contribution.  (Doc. No. 45, Third-Party Defs.' Mem. in Opp'n to Defs.' Mot. for Leave to Am. their Answer, Countercls. and Third-Party Compl. ("Third-Party Defs.' Opp'n Mem.") 7-16.)

## DISCUSSION

### I.  The Hansons' Motion to Dismiss Punitive-Damages Claim

Under Minnesota Statutes Section 549.191, a plaintiff must not include a claim for punitive damages in his or her initial complaint, but may later obtain leave of the Court, based on a *prima facie* evidentiary showing, to amend the complaint to add such a claim.  Minn. Stat § 549.191; *Berczyck v. Emerson Tool Co.*, 291 F. Supp. 2d 1004, 1008 (D. Minn. 2003).  As this District has previously explained, "the Minnesota Legislature adopted, in 1986, the pleading requirements of Section 549.191 in order to deter certain practices in the presentment of punitive damage claims which were thought to be abusive, and in order to address a perceived insurance crisis."  *Ulrich v. City of Crosby*, 848 F. Supp. 861, 866-67 (D. Minn. 1994).  The statute's requirement that a plaintiff file a motion setting forth the factual basis of a punitive-damages claim would serve this purpose by preventing litigants from gaining an unfair advantage through pleading punitive damages without any support.  *See Fournier v. Marigold Foods, Inc.*, 678 F. Supp. 1420, 1422 (D. Minn. 1988) (noting that without the gate-

9

keeping function of the statute, "a claim for punitive damages remains in the pleadings . . . giving plaintiff a tactical advantage in resolving his claims"). Thus, the statute was meant "to prevent frivolous punitive damage claims by allowing a court to determine first if punitive damages are appropriate." *Gamma-10 Plastics, Inc. v. Am. President Lines, Ltd.*, 32 F.3d 1244, 1255 (8th Cir. 1994).

Plaintiffs argue that the Hansons' motion to dismiss should be denied because the proper procedural mechanism for addressing matters in a complaint's prayer for relief is a motion to strike under Fed. R. Civ. P. 12(f) rather than a motion to dismiss or for judgment on the pleadings. (Doc. No. 26, Pls.' Mem. in Opp'n to Defs.' Mot. to Dismiss Pls.' "Punitive Damages Claim" ("Pls.' Punitive Damages Mem.") 5-7.) Alternatively, Plaintiffs argue that the motion should be denied because the Complaint does not "seek punitive damages," but merely reserves Plaintiffs' right to later seek leave to plead punitive damages by including the qualifying language "if available under common law." (*Id.* at 7-8.)

First, this Court need not decide whether a motion to dismiss under Fed. R. Civ. P. 12(b)(6) is a procedurally defective tool for removing a claim for punitive damages when a party fails to comply with Minnesota's punitive-damages-gate-keeping statute.[3] Courts in this District have granted motions to

---

3 At the hearing, counsel for Plaintiffs directed this Court's attention to the case of *Peitzman v. City of Illmo*, 141 F.2d 956 (8th Cir. 1944), in which the Eighth Circuit noted that "the prayer for relief is in fact no part of the claim or cause of action stated." *Id.* at 962. In this 1944 case, the Eighth Circuit made this observation in the context of rejecting the defendant's argument that the

(Footnote Continued on Following Page)

strike such premature assertions of punitive-damages claims as well as motions to dismiss. *Compare Zeelan Indus., Inc. v. de Zeeuw*, 706 F. Supp. 702, 704 (D. Minn. 1989) (granting motion to strike claim for punitive damages included in the plaintiff's initial complaint), *with Livingston v. ITT Consumer Fin. Corp.*, 795 F. Supp. 921, 927 (D. Minn. 1992) (granting motion to dismiss punitive-damages reference from initial complaint for failure to comply with Minn. Stat. § 549.191). And even if this Court were to conclude that the Hansons technically should have filed a motion to strike rather than a motion to dismiss or for judgment on the pleadings, this Court could still strike the reference to punitive damages *sua*

---

(Footnote Continued from Previous Page)

district court improperly allowed amendment of the prayer for relief to seek an increased amount of punitive damages. *See id.* The fact that the plaintiff was permitted to amend the complaint to seek a measure of punitive damages different from that originally pleaded did not alter the appellate court's conclusion that the complaint was properly construed as stating a cause of action sounding in tort. The defendant, the court reasoned, was not prejudiced by either the amendment to the prayer for relief seeking increased punitive damages or the amendment seeking punitive damages in the first instance because the prayer for relief did not change the nature of the underlying claim. *See id.* Read in isolation, the Eighth Circuit's observation that the prayer for relief is not itself a claim could lend some support to Plaintiffs' theory that a motion to dismiss to for failure to state a claim under Rule 12(b)(6) is not the procedural mechanism best suited to eliminating a reference to punitive damages improperly included in the initial complaint. However, section 549.191 also refers to a prayer for punitive damages as a "claim." Minn. Stat. § 549.191 (permitting a party to "amend the pleadings to claim punitive damages" and requiring the movant to show "the factual basis for the claim"). In any event, a party may not "seek punitive damages" in the initial complaint under Minnesota's gate-keeping statute, and this Court will not abandon that statute's clear purpose when determining whether the reference to punitive damages in Plaintiffs' Complaint should remain.

*sponte.  See Zeelan*, 706 F. Supp. at 704 (citing *Lunsford v. United States*, 570 F.2d 221, 227 n.11 (8th Cir. 1977)).

Alternatively, Plaintiffs argue that they do not "seek" punitive damages, but rather, they merely reserve the right to do so upon a later-filed motion.  This Court disagrees.  Plaintiffs rely on *Raye v. Medtronic Corp.*, 696 F. Supp. 1273, 1274 (D. Minn. 1988), where the defendant argued that the plaintiffs' prayer for punitive damages should be stricken for failure to comply with Minn. Stat. § 549.191.  United States District Judge Edward J. Devitt concluded that the complaint did not "request punitive damages but only reserve[d] plaintiffs' rights under Minn. Stat. 549.20 to later move the court for permission to amend the complaint for an award of punitive damages."  *Id.*  In *Raye*, the plaintiffs' initial complaint included the following unambiguous language: "Pursuant to M.S.A. Section 549.20, plaintiffs, and each of them, *reserve the right* to move the court to amend the complaint to ask for relief under 549.20."  (Doc. No. 43, Second Decl. of S. Jamal Faleel in Supp. of Mot. to Dismiss Pls.' Request for Punitive Damages ("Second Faleel Decl.") ¶ 3, Attach. 1, Ex. C at 21 ¶ 86 (emphasis added).)  Such a reservation, Judge Devitt observed, is not foreclosed by the statute.  *See id.*

Here, although Plaintiffs qualified their request that this Court award punitive damages with the phrase "if available under common law," such a qualification does not limit its import to a mere reservation of rights as clearly as

the plaintiff did in *Raye*.[4]  In the Complaint's prayer for relief, Plaintiffs preface the individual paragraphs with the request that the court enter judgment upon their Complaint against Defendants.  Among the paragraphs that follow is a request for an award of punitive damages.  As described above, *Raye* presents a much clearer reservation-of-rights locution.  Read in connection with the other paragraphs in the Prayer for Relief, Plaintiffs' reference to punitive damages cannot properly be construed as a reservation of rights.  Instead, Plaintiffs' Complaint seeks punitive damages, a tactic that is plainly forbidden by Minn. Stat. § 549.191.

This Court therefore concludes that Plaintiffs improperly seek punitive damages in their initial Complaint and that reference to punitive damages should be removed.  However, such dismissal should be without prejudice to the later filing of a properly supported motion to amend the Complaint to assert a claim for punitive damages as permitted by Minn. Stat. § 549.191.

## II.  Motion to Dismiss Indemnification Claim and Motion to Amend

---

[4]     Plaintiffs represent that it is "proper and common practice in Minnesota for a plaintiff to indicate in a complaint an intention to reserve the right to seek punitive damages if they are available under the applicable law."  (Pls.' Punitive Damages Mem. 7.)  Given the plain language of Minn. Stat. § 549.191, such a "common practice," if it exists, appears unnecessary.  The statute itself reserves the litigant's right to bring such a motion.  And the right to bring such a motion is not waived because a litigant fails to reserve it in a pleading.  Such a "proper and common practice" accomplishes little and has the potential to encourage superfluous motion practice.  And it cuts against one of the purposes of the statute, which is to avoid the harmful effects associated with the public filing of punitive-damages pleadings.

## A.	The Third-Party Defendants' Motion to Dismiss the Indemnification Claim in the Original Third-Party Complaint should be Granted

To state a claim that will survive a Rule 12(b)(6) motion, a complaint must allege a set of historical facts, which, if proven true, would entitle the plaintiff to some legal redress against the named defendant(s) under some established legal theory. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980) (noting that "the complaint must allege facts, which if true, state a claim as a matter of law"). As the Supreme Court has stated:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." [*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).] A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*, at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid.* Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.*, at 557 (brackets omitted).

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). The Third-Party Defendants argue that the original Third-Party Complaint fails to state a claim for indemnification that is plausible on its face because it is preempted by ERISA.

As discussed above, in the original Third-Party Complaint, the Hansons' indemnification allegations were directed at the Third-Party Defendants as trustees of the ESOP. At the hearing on the motion, counsel for the Hansons acknowledged that the original Third-Party Complaint could have been more

artfully pleaded.  But the Hansons presented no argument to rebut the Third-Party Defendants' contention that the indemnification claim in the original Third-Party Complaint is preempted.  Instead, the Hansons have proposed to alter their allegations relating to the stock transactions at issue, now seeking indemnification and contribution on the state-law claims for the individual Third-Party Defendants' roles as officers of ELI, not as trustees of the ESOP.

Because the Hansons do not substantively oppose the Third-Party Defendants' argument for dismissal of the Hansons' original indemnification claim on preemption grounds, and because the claim appears to be preempted, this Court recommends that the indemnification claim in the original Third-Party Complaint should be dismissed.  *See Travelers Cas. & Sur. Co. of Am. v. IADA Servs. Inc.*, 497 F.3d 862, 867 (8th Cir. 2007) (concluding that state-law contribution claims were preempted by ERISA); *Atrix Int'l, Inc. v. Hartford Life Group Ins. Co.*, No. 06-4140 (ADM/JSM), 2008 WL 151614, at *5-6 (D. Minn. Jan. 15, 2008) (concluding that a co-defendant's crossclaim for contribution under state-law was preempted by ERISA because the court's evaluation of the co-defendant's liability arising from its role as a fiduciary would, in turn, require a determination of whether the other defendant had breached its own fiduciary duty).

**B.**    **The Hansons' Motion to Amend to Add Claims for Indemnification and Contribution should be Denied in Part and Granted in Part**

### 1.    Motion to Amend Standard

This Court now turns to whether the Hansons should be given leave to amend their Answer, Counterclaims, and Third-Party Complaint to set forth their proposed amended claims—the officer-related claims—for indemnification and contribution against the Third-Party Defendants.  Except where amendment is permitted as a matter of course, under Federal Rule of Civil Procedure 15, "a party may amend its pleading only with the opposing party's written consent or the court's leave [and] [t]he court should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).  The decision whether to grant leave to amend rests in the discretion of the trial court.  *Niagara of Wis. Paper Corp. v. Paper Indus. Union-Mgmt. Pension Fund*, 800 F.2d 742, 749 (8th Cir. 1986).  "[E]ven where some prejudice to the adverse party would result if the motion to amend were granted, that prejudice must be balanced against the hardship to the moving party if it is denied."  *Buder v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 644 F.2d 690, 694 (8th Cir. 1981).  "[D]enial of leave to amend pleadings is appropriate only in those limited circumstances in which undue delay, bad faith on the part of the moving party, futility of the amendment, or unfair prejudice to the non-moving party can be demonstrated."  *Roberson v. Hayti Police Dep't*, 241 F.3d 992, 995 (8th Cir. 2001); *see also United States ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 557-58 (8th Cir. 2006) (same).

Here, the Third-Party Defendants argue that the Hansons' proposed amendments should be denied for futility.  A futility challenge to a motion to

amend a complaint is successful where "claims created by the amendment would not withstand a Motion to Dismiss for failure to state a claim upon which relief can be granted."  *DeRoche v. All Am. Bottling Corp.*, 38 F. Supp. 2d 1102, 1106 (D. Minn. 1998); *see also Lunsford v. RBC Dain Rauscher, Inc.*, 590 F. Supp. 2d 1153, 1158 (D. Minn. 2008) (stating that a motion to amend is futile if the amended complaint would not survive a motion to dismiss).  Applying that standard here, the Hansons' proposed amendments will be deemed futile if the proposed amended pleading does not contain "enough facts to state a claim to relief that is plausible on its face," *see Twombly*, 550 U.S. at 570, or if the amended pleading fails to allege a claim with respect to a "dispositive issue of law." *Neitzke v. Williams*, 409 U.S. 319, 326 (1989) (noting that Rule 12(b)(6) authorizes courts to dismiss claims on the basis of dispositive legal issues).

### 2.    Christopher and Steffen are not Officers of ELI

The Third-Party Defendants first argue that the Hansons' proposed amended claims for indemnification and contribution against Christopher and Steffen are futile because they depend on the Hansons' factually insufficient assertions that Christopher and Steffen were officers of ELI at the time of the stock transactions.  This Court agrees.[5]  Under Minnesota law an "officer" is "a

---

[5]    None of the cases provided by the Hansons holds that a person engaged in the management of a corporation can be deemed an officer of the corporation simply because of his or her managerial responsibilities.  *See Wenzel v. Mathies*, 542 N.W.2d 634 (Minn. Ct. App. 1996) (concluding, based on the facts of the case, that officer-directors breached fiduciary duties to a bank's shareholders

(Footnote Continued on Following Page)

person elected, appointed, or otherwise designated as an officer by the board, and any other person deemed elected as an officer pursuant to section 302A.321." Minn. Stat. § 302A.011, subd. 18. A person can be deemed elected as an officer "[i]n the absence of an election or appointment of officers by the board" if the person is "exercising the principal functions of the chief executive officer or the chief financial officer[.]" *See* Minn. Stat. § 302A.321.

The Hansons' claims for indemnification and contribution in the proposed Amended Third-Party Complaint are based on their theory that Christopher and Steffen owed the corporation and the Hansons a fiduciary duty "[a]s officers of the Company [ELI.]" (*See* Proposed Am. Third-Party Compl. ¶ 192.) Here, the

---

(Footnote Continued from Previous Page)

and the bank's holding company's shareholders even though one defendant was only a director of the bank; both corporations were closely held and the bank director owed the same duty to the bank as to the holding company's equitable shareholders); *Sci. Accessories Corp. v. Summagraphics Corp.*, 425 A.2d 957 (Del. 1980) (affirming trial court's conclusions that former employees had not breached fiduciary duty and duty of loyalty by starting company that competed with their former employer and engaging in some preparation to compete while still employed by the former employer). This Court is aware of no Minnesota caselaw supporting such a proposition.

At the hearing, the Hansons argued that a person to whom an elected or appointed corporate officer delegates his or her duties is deemed an officer of the corporation under Minn. Stat. §§ 302A.351, 302A.361. These statutes respectively permit such delegation of duties (unless prohibited by a corporation's governing documents or a binding resolution), and deem a person to whom the officer's duties are delegated an officer for purposes of determining the standard of conduct that must be exercised in the discharge of the delegated official duties. However, here, the Third-Party Complaint nowhere alleges that an officer of ELI elected or appointed by the corporation's board of directors delegated any duties of his or her office to Christopher and Steffen.

Hansons have not alleged that ELI's board elected, appointed, or otherwise designated Christopher or Steffen as an officer. *See* Minn. Stat. § 302A.011, subd. 18. The Hansons also have not alleged that ELI's board failed to elect or appoint officers. *See id.* § 302A.321. Nor have the Hansons alleged that Christopher and Steffen exercised the principal functions of the chief executive officer or the chief financial officer of ELI such that they could be deemed the corporation's officers. *See id.* All the proposed Amended Third-Party Complaint offers about the roles Christopher and Steffen played at ELI is that each "participated in management meetings, including meetings where the Company's strategic plan was developed, and helped direct the management and policies of the Company." (Proposed Am. Third-Party Compl. ¶¶ 180-81.) In fact, the proposed Amended Third-Party Complaint contains no non-conclusory matter from which it would be reasonable to infer that Christopher and Steffen were "officers" of ELI. Accordingly, this Court recommends that the Hansons' motion to amend its Third-Party Complaint to assert the proposed indemnification and contribution claims against Christopher and Steffen be denied as futile.[6]

### 3. Indemnification

"Indemnity shifts the entire loss from one culpable wrongdoer to another." *Deephaven Capital Mgmt., LLC. v. Schnell*, Civil No. 06-844 (JRT/FLN), 2007

---

[6] The Third-Party Defendants do not contend that the Hansons have failed to allege sufficient facts that Mundinger was an officer of ELI at the time of the stock transactions at issue.

WL 101821, at *2 (D. Minn. Jan. 8, 2007) (quotations omitted). "In Minnesota, the general rule is that joint tortfeasors are not entitled to indemnity." *DS Bond Fund, Inc. v. Gleacher NatWest, Inc.*, No. 99-116, 2001 WL 1168809, at *7 (D. Minn. May 1, 2001) (Davis J.). However, "in certain circumstances a contractual relationship or an implied legal duty requires one party to reimburse the other entirely." *Reimer v. City of Crookston*, No. Civ. 00-370 (ADM/RLE), 2003 WL 22703218, at *5 (D. Minn. Nov. 12, 2003) (quotations omitted). Minnesota Courts have recognized such circumstances through four exceptions to the general rule:

> 1) Where the one seeking indemnity has only a derivative or vicarious liability for damage caused by the one sought to be charged; 2) Where the one seeking indemnity has incurred liability by action at the direction, in the interest of, and in reliance upon the one sought to be charged; 3) Where the one seeking indemnity has incurred liability merely because of a breach of duty owed to him by the one sought to be charged; 4) Where there is an express contract between the parties containing an explicit undertaking to reimburse for liability of the character involved.

*Id.* (quoting *Tolbert v. Gerber Indus.*, 255 N.W.2d 362, 366-68 (Minn. 1977)).

The Hansons do not allege that they are entitled to indemnification because they have a derivative or vicarious liability for damage caused by the Third-Party Defendants, or because they entered into an express contract in which the Third-Party Defendants agreed to reimburse them for any liability. Rather, the gist of the Hansons' indemnification claim is that if the Hansons are found to have received a multi-million dollar windfall due to the falsity of the ELI appraisal, then the Hansons are entitled to be fully reimbursed by the Third-Party

Defendants for any funds the Hansons are required to pay back to the corporation because the Third-Party Defendants owed them a fiduciary duty as ELI's officers.[7]

Under Minnesota law, directors and officers of a corporation are required "to act in a manner that the director or officer reasonably believes to be in the best interests of the corporation." *Bolander v. Bolander*, 703 N.W.2d 529, 548 (Minn. Ct. App. 2005) (citing Minn. Stat §§ 302A.251, subd. 1, 302A.361). And "an officer or director owes a fiduciary relationship *to the corporation* under common law."[8]  *Id.* (emphasis added). However, in Minnesota, corporate officers do not owe any *per se* fiduciary duty to the corporation's directors. *See Swenson v. Bender*, 764 N.W.2d 596, 601 (Minn. Ct. App. 2009) (listing *per se* fiduciary

---

[7]     At the hearing, counsel for the Hansons argued that the second *Tolbert* exception applied because the Hansons relied on the Third-Party Defendants. However, the proposed Amended Answer, Counterclaims and Third-Party Complaint contains no allegations that the Hansons incurred liability "at the direction" or "in the interest" of the Third-Party Defendants. Thus, the second *Tolbert* exception is not triggered by their proposed amended allegations.

[8]     The Hansons argued that *Carlson v. SALA Architects, Inc.*, 732 N.W.2d 324 (Minn. Ct. App. 2007), precludes dismissal of the indemnification claim here. In *Carlson*, the Minnesota Court of Appeals reversed a district court's summary judgment ruling in favor of an architect's client based on a conclusion that a *per se* fiduciary relationship existed between the parties. *See id.* at 331. The court of appeals found that the district court had erred in granting the architect's clients summary judgment because material fact issues remained. *Id.* However, this does not mean that dismissal of a claim premised on a breach of fiduciary duty is never appropriate. *See, e.g.*, *St. James Capital Corp. v. Pallet Recycling Assocs. of North Am.*, 589 N.W.2d 511, 517 (Minn. Ct. App. 1999) (affirming district court's dismissal of breach-of-fiduciary-duty claims against officers and directors of an insolvent corporation because the officers and directors did not owe certain creditors of the insolvent corporation an affirmative duty).

relationships as those of "trustee-beneficiary, attorney-client, business partnerships, director-corporation, officer-corporation, and husband-wife"). Nevertheless, even where no *per se* fiduciary relationship exists, a fiduciary duty can arise through the circumstances of parties' relationship. *See id.* ("Minnesota caselaw recognizes two categories of fiduciary relationship: relationships of a fiduciary nature per se, and relationships in which circumstances establish a de facto fiduciary obligation.").

Because Minnesota law does not recognize a *per se* fiduciary relationship between officers and directors of a corporation, whether the Hansons' indemnification claim is futile boils down to whether the Hansons have pleaded sufficient facts from which it is plausible, on the face of the Third-Party Complaint, to infer that the Third-Party Defendants owed a fiduciary duty to the Hansons under the circumstances alleged. This Court concludes that the Hansons have not pleaded sufficient factual content to support an inference that a fiduciary relationship exists between the Third-Party Defendants' and the Hansons with respect to the stock transactions in issue.

The Hansons have pleaded no factual content from which it would be plausible to infer that the Third-Party Defendants "enjoy[ed] a superior position in terms of knowledge and authority," or that the Hansons "place[d] a high level of trust and confidence" in the Third-Party Defendants. *See Carlson*, 732 N.W.2d at 330-31. The Hansons have also pleaded no facts to support an inference that "the property, interest or authority of the [Hansons was] placed in the charge of

the [Third-Party Defendants]." *See Ruyan of Am., Inc. v. Soterra, Inc.*, Civil No. 07-4730 (MJD/AJB), 2008 WL 927927, at *4 (D. Minn. Apr. 7, 2008) (dismissing fiduciary-duty claims where the plaintiff failed to allege facts supporting an inference that the defendant was in a position of superiority over the plaintiff or that the plaintiff placed its product in the defendant's charge).  Rather, the Hansons have simply alleged, in a conclusory fashion, that they relied on the appraisal procured by the Third-Party Defendants and did so because the Third-Party Defendants had knowledge of ELI's financial condition.  These allegations do not plausibly suggest the kind of special relationship between the Hansons and the Third-Party Defendants that would impose a fiduciary duty on the Third-Party Defendants.  And there are simply no facts in the Hansons' proposed Amended Third-Party Complaint that plausibly suggest that the Hansons reposed confidence in the Third-Party Defendants, resulting in the latter's superiority with respect to the stock transactions in issue.  *See Midland Nat'l Bank of Minneapolis v. Perranoski*, 299 N.W.2d 404, 413 (Minn. 1980) (holding that such a relationship of confidence on the one side and superiority on the other is required for a fiduciary relation to exist).  For these reasons, this Court concludes that the proposed amendment to add an indemnification claim is futile and denies the Hansons leave to amend their Third-Party Complaint to assert such a claim.

Further, two general aspects of the Hansons' indemnification theory render them implausible.  First, the Hansons' theory suggests that the Third-Party Defendants obtained the inaccurate appraisal because they stood to benefit by

wresting control of ELI from the Hansons. Based on the allegations in the proposed Amended Third-Party Complaint, this Court does not find such a theory plausible. According to the theory, in order to wrest control of ELI from the Hansons, the officers allegedly devised a scheme to drastically overpay the Hansons for their shares in the corporation by procuring a false or inaccurate appraisal. Then, having thoroughly jeopardized (if not squandered) ELI's future assets, and gained control of the company, the Third-Party Defendants would attempt to recover the money that the corporation overpaid through litigation such as this. The theory's implausibility flows directly from the unreasonableness of the inferences this Court would be required to draw from the factual content pleaded in the proposed Amended Third-Party Complaint; there are simply no facts in the proposed amended pleading to suggest such a scheme.

Second, under the Hansons' indemnification theory, the Third-Party Defendants would be required to reimburse the Hansons for any amount the Hansons are required to pay back to the ELI for the corporation's overpayment. And the Hansons will *only* be liable to ELI for such an amount if they are found to have come by the overpayment in some wrongful manner because the indemnification claim depends on liability on one of Plaintiffs' state-law claims. Taken to its logical conclusion, this would mean that, if the Third-Party Defendants are required to indemnify the Hansons for any repayment the Hansons must make to ELI, the Third-Party Defendants would be restoring to the Hansons the proceeds of the stock transactions that the Hansons were never

entitled to possess.  Thus, rather than indemnification shifting *a loss* suffered by the Hansons to the Third-Party Defendants, the Hansons would retain a benefit the corporation ought never have bestowed upon them.  *Cf. Hendrickson v. Minn. Power & Light Co.*, 104 N.W.2d 843, 846 (Minn. 1960) (noting that indemnification and contribution flow from principles of restitution and that restitution depends on the recognition "that it is unfair to retain a benefit or advantage which should belong to another"), *overruled in part on other grounds by Tolbert*, 255 N.W.2d at 368 n.11.  Requiring the Third-Party Defendants to indemnify the Hansons under such circumstances is so far removed from the equitable roots of indemnity that the Hansons' proposed indemnification claim is futile.

### 4.    Contribution

"Under Minnesota common law, contribution is an equitable remedy based on equitable principles to secure restitution to one who has paid more than his just share of a liability."  *DS Bond Fund*, 2001 WL 1168809, at *5 (quotations omitted).  "'Contribution rests on common liability, not joint negligence or joint tort.  Common liability exists when two or more actors are liable to an injured party for the same damages, even though their liability rests on different grounds.'"  *Id.* (quoting *Farmers Ins. Exch. v. Vill. of Hewitt*, 143 N.W.2d 230, 233 (Minn. 1966)).  "The right to *seek* contribution is not equivalent to the right to *recover* contribution."  *Perrella v. Shorewood RV Ctr.*, No. Civ.03-424 (JRT/RLE), 2004 WL 741567, at *3 (D. Minn. Mar. 31, 2004) (quotation omitted).  And "it is

not necessary that a court determine either party's liability *prior* to a claim for contribution being made." *Id.* (quotation omitted).

"An intentional tortfeasor is prohibited from seeking contribution from other joint tortfeasors . . . because 'the courts will not aid one who has deliberately done harm, so that no man can be permitted to found a cause of action on his own intentional tort.'" *Oelschlager v. Magnuson*, 528 N.W.2d 895, 899 (Minn. Ct. App. 1995) (quoting Restatement (Second) of Torts § 886A cmt. j.) (citations omitted). "In order to establish intentional wrongdoing, it must be shown that both the act *and* the harm resulting from the act were intended by the actor." *Jendro v. Honeywell, Inc.*, 392 N.W.2d 688, 690 (Minn. Ct. App. 1986) (concluding that evidence that a party was grossly negligent or even reckless does not constitute intentional wrongdoing for the purposes of forfeiture of a right to contribution from a joint tortfeasor).

The Third-Party Defendants argue that the proposed amended contribution claim is futile because all of the state-law claims asserted against the Hansons in Plaintiffs' Complaint "involve intentional wrongdoing by the Hansons, [so] their liability will be the result of intentional wrongdoing – not negligence." (Third-Party Defs.' Opp'n Mem. 16.) The Hansons argue that scienter is not an element of any of Plaintiffs' state-law claims, and, therefore, the Hansons' contribution claim against the Third-Party Defendants should be permitted to go forward. Thus, whether the Hansons are entitled to contribution from the Third-Party Defendants depends, in the first instance, on whether they are held liable for any of Plaintiff's

state-law claims, which include: (1) equitable relief for violations of the Minnesota Business Corporation Act and common law; (2) common law breach of fiduciary duty; (3) breach of the duty of loyalty; (4) unjust enrichment; (5) aiding and abetting; and (6) conspiracy. (Compl. ¶¶ 65-89).

A finding of intentional wrongdoing is certainly consistent with the state-law claims Plaintiffs have asserted. *See* Minn. Stat. § 302A.751, subd. 1(b)(2) (allowing a court the discretion to award equitable relief if a director has acted "fraudulently or illegally toward one or more shareholders"); *Interboro Packaging Corp. v. City of Minneapolis*, No. A09-0189, 2009 WL 2928755, at *8 (Minn. Ct. App. Sept. 15, 2009) (listing elements of unjust enrichment claim as "(1) a benefit conferred by the plaintiff on the defendant; (2) *the defendant's knowing acceptance of the benefit*; and (3) the defendant's acceptance and retention of the benefit where it would be inequitable to retain it without paying for it") (emphasis added); *Tisdell v. ValAdCo*, Nos. C0-01-2054, C6-01-2060, C2-01-2055, C6-01-2057, 2002 WL 31368336, at *12 (Minn. Ct. App. Oct. 16, 2002) (noting that an aiding-and-abetting-tortuous-conduct claim has the following elements: "(1) the primary tortfeasor must commit a tort that causes an injury to the plaintiff; (2) *the defendant must know that the primary tortfeasor's conduct constitutes a breach of duty*; and (3) the defendant must substantially assist or encourage the primary tortfeasor in the achievement of the breach") (emphasis added); *Steele v. Mengelkoch*, No. A07-1375, 2008 WL 2966529, at *2 (Minn. Ct. App. Aug. 5, 2008) ("Civil conspiracy requires the conspirators to have a meeting

of the minds as to plan or purpose of action to achieve a certain result."); *Campbell v. Brake Tru, Inc.*, No. A05-872, 2006 WL 163533, at *2 (Minn. Ct. App. Jan. 24, 2006) (explaining that directors of corporation owe duty of undivided loyalty to the corporation and citing cases holding that a director may not discharge official duties for the benefit of any individual or group other than the corporation).

Plaintiffs' factual allegations suggest that the Hansons acted with intent to harm ELI and the ESOP by procuring a false appraisal that grossly overvalued the corporation for the purpose of giving the Hansons a windfall to the corporation's detriment. (*See* Compl. ¶ 22 (alleging that Harlan Hanson "predetermined that the per share price for [the stock] transactions would be $275 per share"); ¶ 24 (alleging that Harlan Hansons provided the appraiser with inaccurate and incomplete information to obtain the predetermined price); ¶¶ 26-27 (discussing information not disclosed to the appraiser); ¶ 30 (alleging that Harlan Hanson barred the appraiser from talking to the corporation's legal counsel).) Even though some of Plaintiffs' allegations suggest that the Hansons' liability flows from the fact that they "should have known" the appraisal overvalued the ELI stock (*see id.* ¶ 25, 35-36, 43-44), none of the factual content of Plaintiffs' Complaint suggests that the Hansons were merely negligent.

The only claims Plaintiffs asserted in their Complaint that the Hansons appeared to argue require no proof of intent were the fiduciary-duty claims. Although a breach-of-fiduciary-duty claim has the same elements as a claim for

negligence (duty, breach, causation, and damages), *see Rucki v. Grazzini*, Nos. A09-0694, A09-0700, A09-1693, 2010 WL 1286725, at *5 (Minn. Ct. App. Apr. 6, 2010), the Complaint in this matter only alleges facts supporting a theory that the "breach" of the Hansons' fiduciary duty occurred through self-dealing, not through the failure to exercise a standard of care the Hansons owed to ELI as directors. Stated differently, Plaintiffs' Complaint cannot reasonably be read to suggest that the Hansons should incur liability because they breached their fiduciary duty of care to the corporation. *Cf. Bolander v. Bolander*, 703 N.W.2d 529, 556 (Minn. Ct. App. 2005) (Minge, J., concurring specially) (recognizing that directors can be liable for the breach of several fiduciary duties, including the duty of care). Instead the factual matter relevant to the fiduciary-duty claims that was pleaded in the Complaint points toward the Hansons' intent to bilk the corporation out of funds for personal gain, thus invoking potential liability for failure to act in good faith and being disloyal to the corporation. *See Writers Inc. v. West Bend Mut. Ins. Co.*, 465 N.W.2d 419, 423 (Minn. Ct. App. 1991) (noting that officers and directors are required "to act in good faith, with honesty in fact, with loyalty, in the best interests of the corporation"). This latter type of misconduct is precisely the type of intentional wrongdoing that disqualifies a joint tortfeasor from obtaining contribution.

Thus, reading Plaintiffs' Complaint as a whole, this Court concludes that the Hansons' liability on Plaintiffs' state-law claims depends on a showing that the Hansons engaged in intentional wrongdoing by self-dealing. Because, as a

matter of law, a joint tortfeasor is not entitled to contribution where he or she has engaged in intentional wrongdoing, this Court denies the Hansons' request for leave to amend their Answer, Counterclaims and Third-Party Complaint to assert a claim for contribution as well.

## ORDER

Based on the file and all the records and proceedings therein,

**IT IS HEREBY ORDERED** that:

1.      Defendants and Third-Party Plaintiffs' Motion for Leave to File Amended Answer, Counterclaims and Third-Party Complaint, and the Amended Motion for Leave to File Amended Answer, Counterclaims and Third-Party Complaint (Doc. Nos. 23, 35), are **DENIED** to the extent that they seek to add claims for indemnification and contribution.

## RECOMMENDATION

Based on the file and all the records and proceedings therein,

**IT IS HEREBY RECOMMENDED** that:

1.      Defendants and Third-Party Plaintiffs' Motion for Dismissal of Plaintiffs' Punitive Damages Claim (Doc. No. 8), be **GRANTED**; and

2.      Third-Party Defendants' Motion to Dismiss Defendants' Third-Party Complaint (Doc. No. 12), be **GRANTED**.

Date: May 24, 2010

 *s/ Jeffrey J. Keyes*
JEFFREY J. KEYES
United States Magistrate Judge

Under D. Minn. Loc. R 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **June 7, 2010**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. A party may respond to the objecting party's brief within **fourteen days** after service thereof. All briefs filed under this rule shall be limited to 3500 words. A judge shall make a de novo determination of those portions of the Report to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.

Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and file a complete transcript of the hearing within ten days of receipt of the Report.